IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation and LOGISTICS MANAGEMENT, INC., a Washington corporation, | ) ) ) ) ) ) | CV 07-06-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| LAIDLAW TRANSIT, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**I. History of the Case**

Plaintiffs Education Logistics, Inc. ("Edulog") and Logistics Management, Inc. ("Logistics Inc."), filed this action seeking damages for alleged breaches of a software licensing agreement ("the Agreement"). It is the second lawsuit stemming from the Agreement. Plaintiffs voluntarily dismissed the first lawsuit in August 2004 and refiled the action on January 11, 2007. When Plaintiffs refiled suit, this Court granted Defendant's motion for summary judgment on the grounds

-1-

that the claims were barred by the relevant statute of limitations. The Ninth Circuit affirmed in part and reversed in part. The case is remanded for a determination of whether Defendant, Laidlaw Transit Inc. ("Laidlaw") breached the Agreement on or after January 11, 2003.

Before the court is Laidlaw's motion arguing it is entitled to judgement as a matter of law because Plaintiffs did not comply with the notice and cure provision of the Agreement. (dkt # 151). Plaintiffs argue they either provided adequate notice of default or that they were relieved of the duty to provide notice of default.[1] Laidlaw also moves for partial summary judgment arguing the Court should dismiss the claim that providing "look-up access" is a breach of contract. (dkt # 155).

## II. Factual Background

Logistics, Inc. entered into a contract with Laidlaw for the licensing and use of computer software developed by Edulog. The software uses digitized maps and student databases to provide efficient administration of school bus routing for the student transportation business. Logistics Inc. and Edulog (collectively,

---

[1] At the hearing, Plaintiffs' counsel stated defendant is in breach of contract but indicated there would only be default once a breach is proven in court and defendant refuses to pay. Considering that the Plaintiffs argues in their motion papers that proper notice of default was provided as early as 1993, the Court assumes the comment was an off the cuff remark and that Plaintiffs position is that they believed notice of default was provided long ago.

"Plaintiffs") allege in their Complaint that Laidlaw breached the contract by failing to use its best efforts to promote the software, failing to pay royalties and fees required under the Agreement, and providing "look-up access" to school districts without permission or paying royalties or fees.

In the event Laidlaw defaulted, Section 14.4 of the Agreement provides Logistics Inc. "shall give written notice to Laidlaw specifying the default and providing that Laidlaw must cure the default within thirty (30) days." Section 21.0 of the Agreement says that communications delivered by prepaid first-class registered mail constitute sufficient service under the Agreement.

Plaintiffs produced 42 pages of documents that they contend support written notice to Laidlaw. SUF ¶ 16. One of the documents drafted by attorney for Edulog, Denis Lind, was sent September 15, 1999. Laidlaw argues the letter does not constitute sufficient notice because it was delivered by hand, rather than first class registered mail, and because the letter does not express that Laidlaw must cure in 30 days. Another letter dated October 21, 1993, suffers the same alleged defects. Laidlaw represents the remaining documents are mostly e-mails sent during confidential settlement negotiations during the first lawsuit.

The General Manager at Laidlaw Planning Solutions, Scott Parker, testified that he knew about the dispute between Edulog, Logistics, Inc., and Laidlaw.

When asked if "[i]t would be fair to say that the threat of litigation was not going to change [Laidlaw's] position on providing access to the Edulog software," Mr. Parker responded, "It was not. We were comfortable in our position."

### IV. Analysis

A. **Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An adverse party may not rely on mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

B. **Notice and cure provisions**

The Montana Supreme Court enforces notice and cure provisions. In Consolidated Minerals Corp. v. Madison Gold Mines, Inc., the contract had a provision that permitted a party to cure after the court determined that one party was in default. 865 P.2d 1138, 1141 (Mont. 1993). The Supreme Court instructed

the district court that the cure provision should be enforced. Id. at 1144. In the event that the district court found a party defaulted, an opportunity to cure and avoid a breach of contract was required. Id. In Grenfell v. Anderson, when a tenant had no actual or constructive knowledge that the landlord considered the tenant to have defaulted under a contract, the period to cure had not commenced, and the tenant therefore did not breach the contract. Grenfell v. Anderson, 56 P.3d 326, 333–334 (Mont 2002).

Yet, failure to adhere to a technical element of a notice provision may be immaterial if an individual has knowledge of the notice. Christensen v. Hunt, 414 P.2d 648, 651 (Mont. 1966). In Christensen v. Hunt, the notice of default was delivered to the buyer at an address other than the one listed in the contract. The notice was still effective. In Hares v. Nelson, the defendant knew that a notice of default waited for him at the post office, but he refused to retrieve it. 637 P.2d 19, 22 (1981). Again, the Montana Supreme Court held the notice was effective. In contrast, posting a notice of default to a door, instead of by personal delivery or registered or certified mail—as the contract provided, was a material defect when it could not be determined whether the defaulting party received the notice and cured within the cure period. Ahrens v. Cottle, 896 P.2d 1127, 1129 (Mont. 1995).

In their response brief, Plaintiffs argue compliance with the notice provision was not required because Laidlaw has made no effort to cure. A party waives its right to notice when it repudiates a contract. Midwest Payment Sys., Inc. v. Citibank Federal Savings Bank, 801 F.Supp. 9, 14 (S.D. Ohio 1992). In Midwest Payment Systems, Inc. v. Citibank Federal Savings Bank the plaintiff was relieved of the duty to provide notice and an opportunity to cure because the Defendant repudiated the contract by disconnecting plaintiff's services. Id.

Laidlaw had notice Plaintiffs believed it was in default, and arguments that technical aspects of the notice and cure provision were not complied with are unpersuasive. The purpose of a notice and cure provision is to allow an opportunity to resolve disputes before resorting to the courts. A party that refuses to alter its conduct because it recognizes a technical defect in the notice cannot take advantage of the notice and cure provision. Under those circumstances, the purpose of the provision is lost.

Laidlaw has not repudiated the contract, as the defaulting party did in Midwest Payment Sys., Inc., but the record reflects that it has not altered its conduct in order to conform to what Plaintiffs allege the contract requires. Laidlaw's conduct is comparable to the defendant in Hares who argued it had no notice of default even though he knew the default notice waited for him at the post

office. A letter sent in 1999 alerted the company that Plaintiffs considered Laidlaw to be in default. Apparently, Laidlaw did not attempt to cure before Plaintiffs commenced the first lawsuit. Nor did it change its conduct when Plaintiffs dismissed the first case in order to prepare for future litigation. When asked if "[i]t would be fair to say that the threat of litigation was not going to change [Laidlaw's] position on providing access to Edulog software," General Manager at Laidlaw Planning Solutions responded, "It was not. We were comfortable in our position." SGI ¶ 23. Laidlaw has not been denied an opportunity to cure.

The present suit is distinguishable from the cases Laidlaw cites. Laidlaw's reliance on Grenfell does not further its position because the tenant there had neither actual nor constructive notice. Written and electronic communications put Laidlaw on notice that Plaintiffs believed it was in default. That Laidlaw anticipated future litigation is evidenced by its request and subsequent award of fees for work performed in the initial action that it would be unable to reuse in the anticipated second suit. Ahrens is also distinguishable. The defaulting party in Ahrens altered his conduct, and the defect in the notice made it impossible to determine whether the cure was made within the relevant time. Here, Laidlaw has not altered its conduct.

Laidlaw complains that it never received a notice by mailed postage prepaid first class registered mail. But the contract provision Laidlaw relies on does not limit methods of effective notice. Rather it designates one method that constitutes sufficient service. Communications through other means can be sufficient. The record reflects that Laidlaw was not prejudiced by a lost opportunity to cure. Any departure from the notice and cure provision was technical—not material.

**C. "Look-up access"**

In Laidlaw's motion for partial summary judgment (dkt # 155) it argues it has not breached the contract because the contract contemplates that the software would be loaded onto customer computers so a school district can view its bus route or bus schedule information. Laidlaw calls this limited access "look-up access." Plaintiffs argue Laidlaw must pay an additional licensing fee if "look-up access" is provided. Alternatively, Plaintiffs argue Laidlaw has provided school districts with greater access to the software then limited "look-up access."

*1. Must a fee be paid when Laidlaw Customers are granted "look-up access"?*

Section 4.7 in the Agreement specifies that Laidlaw must pay fees under three circumstances:

> 4.7.1 for each installation by Laidlaw of the Software on a computer system, a fee of $1,000;

> 4.7.2 for each feasibility or pre-bid study completed by Laidlaw utilizing the Software, a fee of $500; and
>
> 4.7.3 payment based on regional prices set forth on Schedule B for any installation with a Laidlaw Customer where the Laidlaw Customer requires its own ownership of the software license. . . In such case, [Logistics Inc.] will grant a license for the Software directly to such Laidlaw Customer, without further charge, and Laidlaw may charge the Laidlaw Customer for such license.

Plaintiffs contend Laidlaw breached the contract by not paying fees due under Section 4.7.3. A fee is due when a Customer requires ownership of a software license. But the parties do not identify a contract provision or applicable law that indicates when a customer is required to own a license.

Plaintiffs cite case law that states the holder of an exclusive license must obtain permission from the copyright owner before transferring or sub-licensing the protected material. But these cases are inapposite because Defendant holds a nonexclusive license. SUF ¶ 21. "A pure nonexclusive license does not restrict the licensor from subsequently licensing of the same informational asset to other licensees." Raymond T. Nimmer & Jeff Dodd, <u>Modern Licensing Law</u>, § 5:4 (2010).

Nor has Laidlaw established that a fee under Section 4.7.3 can be avoided if a customer limits its use or has restricted use to the software. Laidlaw argues provisions of the contract evidence that the parties contemplated the software

-9-

would be used on customer computers. Logistics Inc. granted Laidlaw:

> a perpetual and irrevocable nonexclusive license within the Licensed Territory to market, install, apply, maintain, develop, support, and use the Product for or in connection with school bus transportation.

SUF ¶ 21. The contract permits Laidlaw to:

> make or cause to be made as many copies of the Software (including copies for back-up purposes), Documentation and Support materials as are necessary for or in connection with Laidlaw's business without further permission from LMI or Edulog and regardless of whether such Software, Documentation and Supporting Materials are copyrighted or otherwise restricted or proprietary; provided, that all such copies shall be subject to the terms of this Contract.

SUF ¶ 21. The contract also authorizes Laidlaw to install the software in connection with school bus transportation. Section 2.8 states Laidlaw may:

> concurrently use the Software for Laidlaw's business purposes on any number of computer workstations used, employed, owned, leased, rented or otherwise acquired by Laidlaw, its employees, consultants and customers.

SUF ¶ 24. According to Laidlaw, authorization to copy and install the software on other computers supports the conclusion that no fee is due when schools are given "look-up access." Finally, the warranty at Section 8.0 states:

> when the Product is placed in operation or used, it will perform the functions detailed in the Edulog User Manual current and delivered to Laidlaw at the date of execution of this Contract, and that the Software will be compatible with and operate properly on or with the Laidlaw Customer's equipment for which it is intended.

SUF ¶ 25. Laidlaw argues a warranty that the software will work on customer

-10-

equipment evidences that the parties contemplated the software would be loaded on customer equipment.

While the contract provisions cited by Laidlaw may indicate that the software can be loaded onto customer computers, it has not established that a school district does or does not need a license to have "look-up access." If a customer must own a license to have "look-up access," Laidlaw is required to pay a fee—even if the use is limited. Unfortunately, the Agreement does not specify under what circumstances a customer requires a license.

Laidlaw also argues the use of the word "Software" in Section 4.7 envisions only full usage of and access to the software. Laidlaw does not explain this conclusion. Aside from Laidlaw's absent explanation, the argument is also unpersuasive considering the term "Software" is not used in the applicable contract provision, Section 4.7.3.

Considering that pursuant to Section 4.7.1 Laidlaw must pay a $1,000 fee for each installation by Laidlaw of the Software on a computer system, the fees under Section 4.7.3 may contemplate more extensive use. The licensing fees under schedule B are substantial. The parties may have intended that a customer who uses the software only to view bus route and schedule information does not have to pay an additional fee. On the other hand, a 1993 letter indicates that

Logistics Inc. waived a fee when one Laidlaw customer desired limited access to the Software. SUF ¶ 29. A record that a fee was waived indicates that Laidlaw may have sought permission for a fee waiver. If a waiver was sought, the parties understood a fee was due.

Summary judgment is not appropriate because the Agreement does not make clear when fees are due under Section 4.7.3. The parties' intention is ambiguous. When a court determines that an ambiguity exists, "the evidence is presented to the jury so that it may determine, on the basis of the written contract, as explained or supplemented by the extrinsic evidence, which of two or more meanings the parties intended." Mary J. Baker Revocable Trust v. Cenex Harvest Sts., Coops., Inc., 164 P.3d 851, 866 (Mont. 2007) (citing Richard A. Lord, Williston on Contracts vol. 11, § 33:39, at 815-16 (4th ed., West 1999)). Considering the ambiguity in the contract, summary judgment is not appropriate.

2. *Are Plaintiffs equitably estopped from charging a fee for "look-up access"?*

Laidlaw also argues that Plaintiffs are equitably estopped from charging a fee for "look-up access" because they allege Plaintiffs acknowledged in the Agreement and post-Agreement communications that "look-up access" does not trigger a fee. The doctrine of equitable estoppel can be invoked when a party,

through intentional conduct, conceals a material fact.[2] Anderson v. Stokes, 163 P.3d 1273, 1282 (2007). The party invoking the doctrine has the burden of proof. Id.

Equitable estoppel does not apply here because Laidlaw has not argued that Plaintiffs concealed a material fact. Instead, Laidlaw argues the Agreement and post-Agreement communications evidence an understanding that "look-up access" was distinguishable from full access. Laidlaw's position is the parties agreed "look-up access" does not trigger a fee—not that a material fact was concealed.

### 3. *Have Plaintiffs' waived the right to claim "look-up access" fees?*

Finally, Laidlaw asserts that Plaintiffs waived the right to fees for "look-up access." Waiver is "a voluntary and intentional relinquishment of a known right, claim or privilege which may be proved by express declarations or by a course of acts and conduct so as to induce the belief that the intention and purpose was to waive." Idaho Asphalt Supply v. Mont. Dept. of Transp., 991 P.2d 434, ¶ 19

---

[2]To prove equitable estoppel, a party must show: (1) the existence of conduct, acts, language, or silence amounting to a representation of concealment of a material fact; (2) contemporaneous knowledge of facts by the party to be estopped, or at least circumstances from which such knowledge is necessarily imputed to him; (3) lack of knowledge of true facts by the party claiming the benefit of estoppel; (4) intent or expectation, on the part of the party to be estopped that his conduct will be acted upon by the other party, or circumstances that make it both natural and probable that the conduct will be so acted upon; (5) the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and (6) change in the other party's position for the worse.

(Mont. 1999).

A one time departure from contract terms does not necessarily establish a waiver. Id. at ¶ 26–27. In <u>Idaho Asphalt Supply v. Montana Department of Transportation</u>, the Department of Transportation accepted a test result that did not comply with a contractual temperature requirement. In light of subsequent efforts to enforce the contract terms, the Montana Supreme Court held the one time departure was not an intentional relinquishment of a right. <u>Id.</u>

In support of its waiver argument Laidlaw cites a letter Hien Nguyen, CEO of Edulog and Logistics Inc., sent in 1993 that says,

> Laidlaw may not let the client himself operate any portion of EDULOG software. (Please note that, Edulog, as a result of our conversation of 10/8/93, has already agreed to relax this restriction by allowing a Laidlaw customer limited access to the EDULOG software through Laidlaw's license.)

SUF ¶ 29. Plaintiffs respond that the letter is presented out of context and does not establish waiver. SGI ¶¶ 33–43. Plaintiffs explain the letter was sent as part of failed negotiations. Laidlaw was unwilling to offer reciprocal benefits, and Plaintiffs assert that while an exception for one school district was made, a general waiver was never implemented. <u>Id.</u>

Summary judgment is not appropriate because the parties dispute genuine issues of material fact. The parties dispute the context and the extent of the

communications relied on by Laidlaw. Considering the dispute, the snippets of communication presented by Laidlaw do not establish an intentional relinquishment of a right to fees. Plaintiffs appear to have consistently asserted a right to fees, and as reflected in the reasoning in <u>Idaho Asphalt Supply</u>, allowing one school district fee free access to software does not amount to a waiver.

## V. Conclusion

Summary judgment is not appropriate on either motion. Laidlaw has not been denied the benefit of the notice and cure provision. Nor has Laidlaw established that the parties intended no fees would accrue when customers were granted "look-up" access. And Laidlaw's arguments for equitable estoppel and waiver are unpersuasive. For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (dkt # 151) and Defendant's Motion for Partial Summary Judgment (dkt # 155) are DENIED.

Dated this 13th day of May, 2011.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT