IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation and LOGISTICS MANAGEMENT, INC., a Washington corporation, | ) ) ) ) | CV 07-06-M-DWM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| LAIDLAW TRANSIT, INC., a Delaware corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Edulog moves to compel discovery related to Laidlaw's efforts in promoting

Edulog's bus-routing software. (Dkt # 207); see Fed. R. Civ. P. 37. The parties

appeared before the Court on January 6, 2012, to argue the motion. The motion is

granted. Since the parties are familiar with the facts and procedural history of this

case, they are recited here only when necessary to explain the order.

1

## I.    Discovery standard

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

The scope of discovery and the definition of "relevant" under Rule 26(b)(1) are "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "'If the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action.'" Moe v. Sys. Transp., Inc., 270 F.R.D. 613, 618 (D. Mont. 2010) (quoting Brown v. Lombard Canada, 26 M.F.R. 220, 221–22 (2000)).

With that said, there are three circumstances that limit the scope of discovery:

> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

2

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

If a party refuses to disclose requested information, the requesting party may move to compel the opposing party to produce the information. Fed. R. Civ. P. 37(a)(1). "Based on the liberal discovery policies of the Federal Rules of Civil Procedure, a party opposing discovery carries a 'heavy burden' of showing why discovery should not be allowed." Moe, 270 F.R.D. at 618 (D. Mont. 2010) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975)). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Id. (citations and internal quotation marks omitted).

## II.    Edulog's discovery requests

Edulog seeks responses to three discovery requests, each of which have various sub-parts:

**Interrogatory No. 1** (Plaintiffs' Sixth Set of Interrogatories and

Requests for Production)[1]: This request asks Laidlaw to identify all of Laidlaw's customers from January 11, 2003, to present and to describe the nature of the services that Laidlaw provided, including whether Laidlaw or any other party provided the customer with bus-routing software. The request also asks Laidlaw to identify the number of buses that Laidlaw provided to each of its customer during each year.

**Requests for Production Nos. 1 and 2** (Plaintiffs' Eighth Set of Requests for Production): These requests ask Laidlaw to produce documents showing any efforts that Laidlaw made to promote Edulog's software to 50 school districts, most of which had purchased the software. The requests also asked Laidlaw to identify the Laidlaw representative who performed the "sales pitch" to the schools, the number of the buses at each school, and the date the software was installed.

**Rule 30(b)(6) Deposition Notice** (Plaintiffs' Third Amended Notice of Rule 30(b)(6) Deposition to Defendant Laidlaw Transit, Inc.): In its notice, Edulog asks Laidlaw to produce a corporate representative to discuss several topics related to two categories of schools: those where Edulog software was implemented (Exhibit B) and those where competing software was implemented (Exhibit C). Laidlaw objected to eight of the topics:

> **Topic No. 4**: The commencement date of any Laidlaw busing contract with the school districts listed in Exhibit B.

> **Topic No. 6**: The number of buses in service at each of the School districts listed in Exhibit B as of: (a) the commencement of Laidlaw's contract with the school district, if such contract commenced in 2003 or later; and (b) the date of the installation of the software.

---

[1] Despite having served at least six set of interrogatories and requests for production, the parties assured the Court that they have not exceed the numerical limits for such requests. <u>See</u> Fed. R. Civ. P. 33(a)(1).

**Topic No. 7**: Laidlaw's efforts to promote the software to the school districts listed in Exhibit B.

**Topic No. 8**: Laidlaw's assistance to the school districts listed in Exhibit C to choose routing software.

**Topic No. 10**: The commencement date of any Laidlaw busing contract with school districts listed in Exhibit C.

**Topic No. 12**: The number of buses in service at each of the school districts listed in Exhibit C as of: (a) the commencement of Laidlaw's contract with the school district, if such contract commenced in 2003 or later; and (b) the date of the installation of the routing software with the school district.

**Topic No. 13**: Laidlaw's efforts to promote the software to the school districts listed in Exhibit C.

**Topic No. 14**: Laidlaw's efforts since 2003 to promote the use of the Software to its existing and prospective customers.

Motion to Compel 2–17 (dkt # 207).

## III.   Discussion

In its objections, Laidlaw does not argue that any of the requested information is privileged. Instead, it argues that the information is either irrelevant or subject to the three limiting circumstances in Rule 26(b)(2)(C)(i)–(iii). Laidlaw's objections fail.

5

## A.     Interrogatory No. 1

The information that Edulog asks for in Interrogatory No. 1 is relevant to its claims. In particular, the information is critical to Edulog's damages analysis. The thrust of Edulog's best-efforts claim is that nearly all of Laidlaw's school-district customers would have purchased the Edulog software if Laidlaw had actually used its best efforts to promote the software. Of course, the merit of that argument is a separate issue, but, in order to calculate its alleged damages, Edulog needs to know which schools purchased the software and which ones did not. Moreover, it needs to know the number of buses at each school in order to accurately calculate the royalty payments it is allegedly could have received.

Laidlaw offers four specific objections in response, but each is without merit.

### 1.     Objection: Edulog unreasonably delayed its challenge to Laidlaw's objection.

Laidlaw claims that Edulog's motion is untimely because Laidlaw provided its response on March 8, 2011 and Edulog waited until October 6, 2011, to inform Laidlaw of the alleged deficiency. After remand from the Ninth Circuit, the Court reset the discovery deadline to November 9, 2011, and the motions deadline to December 9, 2011. (Dkt # 186). Edulog made its objection known a month before

the discovery deadline and timely filed its motion to compel. Laidlaw cites no legal authority supporting its position that Edulog's challenge to Laidlaw's response is untimely.

**2.    Objection: Laidlaw has already produced a significant amount of data responsive to Interrogatory No. 1.**

Laidlaw claims that it has provided all the requested information for: (1) schools "that have utilized routing software and for which Laidlaw influenced their software purchase decision," including an updated spreadsheet, and (2) schools "for which Laidlaw has a record of routing software being operated since at least 2001." Laidlaw also claims to have provided "a complete list of its customers."

The fact that Laidlaw has provided some of the requested information does not mean it can refuse to provide the remaining information. For example, Laidlaw did not provide detailed information (e.g., bus counts, nature of services, etc.) for its school-district customers that do not use routing software. Accordingly, this objection fails too.

**3.    Objection: Laidlaw does not maintain historical bus count data.**

Interrogatory No. 1 asks Laidlaw to provide "the number of buses provided to the customer during each year." Laidlaw, though, claims that it does not keep

that historical data. Instead, except for the past few years, it has kept only current bus-count data. At the hearing for this motion, Laidlaw's counsel suggested that, since about 2008 or 2009, Laidlaw has maintained more comprehensive data through an online database.

If a party anticipates that it will be a party to a lawsuit, it has an obligation to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); see U.S. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1110–11 (9th Cir. 2008) (citations and internal quotation marks omitted); Cont. Cas. Co. v. St. Paul Surplus Lines Ins., 265 F.R.D. 510, 534 (E.D. Cal 2010). While a litigation hold imposes a duty to preserve, it does not impose a duty to create. See Jimena v. UBS AG Bank, 2010 WL 4644408 at *2 (E.D. Cal. Nov. 5, 2010) (observing that a party cannot be compelled to provide information that it does not have).

Here, once Laidlaw became aware that the historical bus-count data might be needed for purposes of litigation, it had a duty to preserve that data, to the extent it was already collecting or maintaining it. Since at least 2008 or 2009, Laidlaw has apparently maintained historical bus-count data (to some degree) through its online database. To the extent that historical bus-count data is available

8

through that database or some other source, Laidlaw must provide it to Edulog.

    **4.     Objection: The burden of responding outweighs any potential benefits.**

       Laidlaw argues that a full response would be too expensive and too time consuming. Specifically, Laidlaw speculates that a full response would require in excess of 1,000 man-hours from Laidlaw and hundreds of hours from Laidlaw's attorneys to compile the information. Providing a full response, Laidlaw claims, would be overly burdensome because the information is spread across its nine regional offices and 600 branch offices.

       Under Rule 26(b)(2)(C)(iii), a party need not provide discovery if "the burden or expense of discovery outweighs its likely benefit . . . ." When balancing the expense against the likely benefit, the Court must consider: (1) the needs of the case, (2) the amount in controversy, (3) the parties resources, (4) the importance of the issues at stake in the action, and (5) the importance of the discovery in resolving the issues. Id.

       Each of the five factors in Rule 26(b)(2)(C)(iii) weighs in Edulog's favor. Edulog asks for information concerning both schools that have Edulog software and those that do not so that it can evaluate whether and how Laidlaw used its best efforts to promote the software. Edulog argues that information will also provide a

sharper estimation of its damages. Moreover, the number of buses at each school is important because royalties are paid on a per-bus basis.

The burden of responding to Edulog's request does not outweigh its importance. Significantly, at the hearing, Laidlaw agreed to identify which of its regional and branch offices have responsive information and to make that information available to Edulog for inspection and copying. Edulog agreed that it would be willing, at its own cost, to travel to the offices to retrieve that information. As a result, Edulog, rather than Laidlaw, will bear the lion's share of the expense and labor.

In summary, Laidlaw must fully respond to Interrogatory No. 1, with the exception that Laidlaw need not provide historical bus count data that it never collected. It must provide historical bus-count data available through its online database or other sources. Laidlaw is allowed to respond to the request by identifying which of its offices have responsive information or evidence and then make that information available to Edulog at the respective offices.

**B.    Requests for Production No. 1 and 2**

Edulog's Request for Production No. 1 (from its Eighth Set of Interrogatories and Requests for Production) asks Laidlaw to produce documents:

(e) showing (i) any efforts made by Laidlaw to promote the Software or

10

> other services  of Edulog to [45 school districts, most of which purchased Edulog's software], (ii) the person(s) who performed the sales pitch for Laidlaw, (iii) the number of buses at any of [the school districts], and (iv) the date the Software was installed on Laidlaw computers . . . .

Motion to Compel 3. Request for Production No. 2 asks for the same information for five additional school districts at which Edulog's software had been implemented. Id. at 7. Laidlaw objected to both requests because, it claimed, they are overly broad, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and harassing, and duplicative of prior discovery requests.

The requested information is relevant to Edulog's claims. First, the information might illustrate whether and how Laidlaw used its best efforts to promote Edulog's software. Second, it might shed light on how much influence Laidlaw had on the school districts' software-purchasing decisions. Finally, the information could clarify why Laidlaw might have chosen to promote Edulog's software to some school districts and not others—e.g., to avoid royalty payments to Edulog.

As with Interrogatory No. 1, the five factors in Rule 26(b)(2)(C)(iii) weigh in Edulog's favor. Laidlaw claims that Edulog's request is overly burdensome, but Laidlaw has agreed to identify which of its offices have responsive information

11

and to make that information available to Edulog. Thus, for the same reasons

given with respect to Interrogatory No. 1, the Court orders Laidlaw to fully

respond to Requests for Production Nos. 1 and 2. Laidlaw may satisfy its

obligation by identifying where the information is located and making it available

to Edulog.

## C.   30(b)(6) deposition

In its Third Amended Notice of Rule 30(b)(6) Deposition to Laidlaw,

Edulog asked that Laidlaw produce a corporate representative to discuss several

topics related to two categories of schools: those where Laidlaw implemented

Edulog software was implemented (Exhibit B, below) and those where competing

software was implemented (Exhibit C, below). Laidlaw objected to eight of the

topics:

> **Topic No. 4**: The commencement date of any Laidlaw busing contract
> with the school districts listed in Exhibit B.

> **Topic No. 6**: The number of buses in service at each of the School
> districts listed in Exhibit B as of: (a) the commencement of Laidlaw's
> contract with the school district, if such contract commenced in 2003 or
> later; and (b) the date of the installation of the software.

> **Topic No. 7**: Laidlaw's efforts to promote the software to the school
> districts listed in Exhibit B.

> **Topic No. 8**: Laidlaw's assistance to the school districts listed in Exhibit
> C to choose routing software.

**Topic No. 10**: The commencement date of any Laidlaw busing contract with school districts listed in Exhibit C.

**Topic No. 12**: The number of buses in service at each of the school districts listed in Exhibit C as of: (a) the commencement of Laidlaw's contract with the school district, if such contract commenced in 2003 or later; and (b) the date of the installation of the routing software with the school district.

**Topic No. 13**: Laidlaw's efforts to promote the software to the school districts listed in Exhibit C.

**Topic No. 14**: Laidlaw's efforts since 2003 to promote the use of the Software to its existing and prospective customers.

Motion to Compel 8–17. Laidlaw's objections are without merit, and they must make a representative available for testimony on these topics.

Federal Rule of Civil Procedure 30(b)(6) allows a party to name a corporation as a deponent. The deposing party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The corporation must then designate a representative to testify on those matters. Id. "The corporate party . . . has an affirmative duty to educate and to prepare the designated representative for the deposition." Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552, 558 (D. Mont. 2009) (citation omitted). "This duty requires a Rule 30(b)(6) designee to testify to more than just what he or she personally knows. The designee speaks for the organization as a whole and must

make efforts to be able to do so." Id. (citation omitted).

      1.     **Topic Nos. 4 & 10**

      Topics 4 and 10 request testimony regarding the commencement date of busing contracts between Laidlaw and the schools listed in Exhibits B and C. Laidlaw objected that these topics are overly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, after the 30(b)(6) deposition, Laidlaw provided a spreadsheet listing all the contract commencement dates. As a result, Laidlaw claims, this issue is now moot. Laidlaw is once again mistaken. The fact that Laidlaw provided relevant documents after the deposition does not rectify its failure to produce a representative to testify on the substance of those documents. Id. at 559 ("Producing documents . . . in lieu of testimony . . . is not a substitute for providing an educated deponent." (citation omitted)). Laidlaw should have permitted Edulog to ask the corporate representative about the contract commencement dates that Laidlaw subsequently provided. Laidlaw does not seriously dispute the relevance of this information. And the information was (or now is) readily available to the representative. Laidlaw must therefore produce a representative to testify on Topic Nos. 4 and 10.

### 2. Topic Nos. 6 & 12

Topics 6 and 12 request testimony regarding the number of buses in service at the schools as of (a) the commencement of Laidlaw's contract with the school district, if the contract commenced in 2003 or later, and (b) the date the Edulog software was installed. Laidlaw's principle objection is that it does not maintain records of bus counts for contract commencement dates or software installation dates. As discussed above, to the extent this information is available (e.g., through the online database), Laidlaw must provide it—as well as related testimony from a corporate representative—to Edulog.

### 3. Topic Nos. 7, 8, 13, & 14

Topics 7, 8, 13, and 14 request testimony on Laidlaw's efforts to promote Edulog's software. Laidlaw in clear contravention of the rule objected and stated that it would not produce a representative to testify on:

1. districts where Edulog has been implemented;

2. districts for which Laidlaw has no record of any involvement in the purchase or implementation of routing software;

3. situations in which Laidlaw did not influence the district's choice to utilize competing routing software;

4. districts where routing software was implemented prior to the statute of limitations cutoff in this case; or

5.   districts where routing software was implemented between the Court's summary judgment ruling regarding best efforts and the Ninth Circuit's reversal of that ruling, as Laidlaw was not subject to a best efforts obligation during that time.

As discussed above, information regarding Edulog's promotional efforts is relevant, regardless of whether that information concerns a school where Edulog software was implemented or not. So the first three of the five specific objections above fail.

The last two objections concern information for a specific time period. The first is the period of time outside the statute of limitations—that is, prior to January 11, 2003. In Topic 8, Edulog requests testimony regarding Laidlaw's assistance to the school districts listed in Exhibit C, 13 of which had competing software installed during this time period. Laidlaw might have assisted more than 13 schools during this time period, but Edulog simply selected these 13 as a sample. Laidlaw claims it should not have to provide this information for two reasons: (1) Edulog cannot claim damages based on these schools, so the information is irrelevant, and (2) Edulog did not provide any rationale as to why it selected these 13 schools as opposed to others. Both of these rationales fail.

First, even though Edulog cannot claim damages based on these schools, the information is still relevant and might establish a course of conduct. See Whittaker

16

Corp. v. Execuair Corp., 736 F.2d 1341, 1347 (9th Cir. 1984) ("Evidence of events or transactions which cannot be the subject of a suit by virtue of a statute of limitations bar may be introduced to show the nature and character of transactions under scrutiny or to establish a course of conduct." (citations omitted)). So Edulog may still inquire about the 13 schools, even though the statute of limitations might bar any claim arising out of Laidlaw's transactions with those schools.  The self imposed limit of 13 is reasonable and not burdensome.

Second, Laidlaw has not provided any legal support for its argument that it does not have to provide testimony concerning the 13 schools simply because Edulog selected those schools out of a larger set of schools. Even so, Edulog argues that it selected the 13 schools for a reason: "The districts on the list of 13 were selected because it appears that Laidlaw implemented competing routing software or no software to minimize its costs, including royalty payments." The information is relevant, then, because it might show why Laidlaw chose to promote a competitor's software rather than Edulog software.

The second time period is the period between this Court's summary judgment order and the Ninth Circuit's memorandum disposition. In its summary judgment order, this Court concluded that the best-efforts provision no longer had any effect. The Ninth Circuit reversed that decision, but Laidlaw claims that, as a

17

result of this Court's judgment, it did not have to abide by the best-effort's provision while the judgment was on appeal. As a result, Laidlaw argues, any testimony concerning transactions with school districts during that time period is irrelevant. Again, Laidlaw's argument fails.

The Supreme Court has long held that if a party has been damaged on account of an erroneous judgment while the judgment was on appeal, then that party may recover those damages. A. Coast Line R.R. v. Natl. Farm Fin. Corp., 295 U.S. 301, 309 (1935) ("[W]hat has been lost to a litigant under compulsion of a judgment shall be restored thereafter, in the event of a reversal by the litigants opposed to him, the beneficiaries of the error."); Baltimore & Ohio R.R. v. United States, 279 U.S. 781, 786 (1929) ("The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established."); Arkadelphia Milling Co. v. St. Louis. S.W. Ry., 249 U.S. 134 (1919) ("The principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal to be restored by his adversary to that which he has lost thereby."); accord Caldwell v. Puget Sound Elec. Apprenticeship, 824 F.2d 765, 767 (9th Cir. 1987); see also Paramount Pictures Theatres Corp. v. Partmar Corp., 97 F. Supp. 552 (D.C. Cal. 1951); Khadr v. United States, 529 F.3d 1112, 1115–16 (D.C. Cir.

18

2008); <u>Atlanta J. & Const. v. City of Atlanta Dept. of Aviation</u>, 322 F.3d 1298

(11th Cir. 2003).

 In particular, if an appellate court determines that a trial court misinterpreted

a contract, the trial court may then award damages that resulted from that

misinterpretation while the case was on appeal. <u>See e.g.</u> <u>PSM Holding Corp. v.

Natl. Farm Fin. Corp.</u>, 743 F. Supp. 2d 1136 (C.D. Cal. 2010) (applying the cases

above, among others). <u>See also</u>; <u>Caldwell</u>, 824 F.2d at 767; <u>Disher v. Citigroup

Global Markets, Inc.</u>, 486 F. Supp. 2d 790 (S.D. Ill. 2007); <u>see generally

Restatement (Second) of Judgments</u> § 16.

 Since Edulog has a colorable claim for damages that it incurred during its

appeal to the Ninth Circuit, that time period is relevant to Edulog's damage

analysis, and Laidlaw's objection to the contrary fails.

 In summary, Laidlaw must produce a corporate representative to testify on

all the eight topics to which it objected.

**D. Fees**

 The Court admonished the parties several times that the losing party would

have to pay the prevailing party's reasonable expenses and attorney's fees that it

incurred as a result of Edulog's motion. <u>See e.g.</u> Order (dkt # 220). Federal Rule of

Civil Procedure 37(a)(5)(A) provides:

> If the motion is granted—or if the disclosure or requested discovery is
> provided after the motion was filed—the court must, after giving an
> opportunity to be heard, require the party . . . whose conduct necessitated
> the motion . . . to pay the movant's reasonable expenses incurred in
> making the motion, including attorney's fees.

An award of expenses and fees is mandatory unless:

> (i) the movant filed the motion before attempting in good faith to obtain
> the disclosure or discovery without court action;

> (ii) the opposing party's nondisclosure, response, or objection was
> substantially justified; or

> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). The interposed objections meet none of these

criteria. Here, Laidlaw wrongfully withheld information from Edulog. As a result,

Edulog is entitled to reasonable costs and attorney's fees that it incurred in making

its motion and in seeking to compel discovery.

Accordingly, IT IS ORDERED that Education Logistics's motion to compel

(dkt # 207) is GRANTED.

On or before January 30, 2012, Laidlaw Transit shall identify which of its

regional and branch offices have information that is responsive to Edulog's

Interrogatory No. 1 (Plaintiffs' Sixth Set of Interrogatories and Requests for

Production) and Requests for Production Nos. 1 and 2 (Plaintiffs' Eighth Set of

Requests for Production). Laidlaw shall then immediately make that information

20

available to Edulog for inspection and copying at the branch or regional office site. Edulog shall be responsible for all reasonable costs associated with inspection and copying.

IT IS FURTHER ORDERED that Laidlaw must produce historic bus-count data to the extent that the data is available (e.g., through its only database or another source).

IT IS FURTHER ORDERED that on or before February 10, 2012, Laidlaw shall make a corporate representative available for deposition testimony on Topic Nos. 4, 6, 7, 8, 10, 12, 13, and 14, as identified in Plaintiffs' Third Amended Notice of Rule 30(b)(6) Deposition to Defendant Laidlaw Transit, Inc. Laidlaw shall be responsible for paying Edulog's reasonable travel expenses as well as attorney fees associated with the deposition.

IT IS FURTHER ORDERED that the Court's May 8, 2008, protective order (dkt # 37) shall apply to all responsive information at issue in this order.

IT IS FURTHER ORDERED that Laidlaw shall pay Edulog's reasonable expenses incurred in making its motion to compel, including attorney's fees. Within 14 days of the date of this order, Edulog shall file and serve an application for attorney's fees and costs, supported by affidavits from counsel. If Laidlaw has any objections to Edulog's application, Laidlaw must file them within 14 days after

the application is filed.

IT IS FURTHER ORDERED that, if Laidlaw fails to comply with this order, the Court may grant the alternative remedies that Edulog requested in its motion to compel (dkt # 207): "(1) [E]xclude any evidence offered by Laidlaw that Laidlaw used its best efforts to promote Edulog's Software; (2) draw the inference and instruct the jury that Laidlaw did <u>not</u> use its best efforts to promote Edulog routing software to Laidlaw's customers; and (3) draw the inference and instruct the jury that all customers on Laidlaw's customer lists became Laidlaw customer post-2003 unless Laidlaw has already produced documentation to the contrary."

Dated this 10th day of January 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

22